Warren Norred, Texas State Bar No. 24045094
Clayton L. Everett, Texas State Bar No. 24065212
NORRED LAW, PLLC
515 E. Border Street
Arlington, Texas 76010
Telephone: (817) 704-3984
clayton@norredlaw.com
Proposed Counsel for Debtors

# United States Bankruptcy Court
## Northern District of Texas
### Fort Worth Division

| | |
|---|---|
| **In re:**<br>**Reytech Services, LLC**<br>**Debtor** | **Case No. 22-40334-mxm11**<br>**Chapter 11** |

## DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING PAYMENT OF PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION

The above-captioned debtor and debtor in possession (collectively, the "**Debtor**") hereby submit this motion (this "**Motion**") for the entry of interim and final orders, substantially in the form attached hereto as Exhibit A (the "**Proposed Interim Order**") and Exhibit B (the "**Proposed Final Order**," and together with the Proposed Interim Order, the "**Proposed Orders**"), pursuant to sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), (a) authorizing, but not directing, the Debtor, in accordance with its stated policies and in its discretion, to pay prepetition employee wages, salaries and other accrued compensation, (ii) pay prepetition employee business expenses, (iii) honor workers' compensation obligations, (iv) make payments for which prepetition payroll deductions were made, (v) pay processing costs and administrative expenses relating to the foregoing payments and contributions, and (vi) make payments to third parties incident to the foregoing payments and contributions, and

(b) authorizing banks and other financial institutions (collectively, the "**Banks**") to honor and process check and electronic transfer requests related to the foregoing. In support of this Motion, the Debtor rely upon and incorporate by reference the *Declaration of Doug Patterson* ("**Doug Patterson's Declaration**"), filed contemporaneously herewith. In further support of this Motion, the Debtor respectfully state as follows:

<u>**JURISDICTION AND VENUE**</u>

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "Amended Standing Order"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief sought herein are sections 105(a), 363(b), 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

<u>**BACKGROUND**</u>

    **A.    General**

2. On the date hereof (the "Petition Date"), each of the Debtor commenced a voluntary case under Subchapter V of Chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate is businesses and manage its properties as Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committees have been appointed in this chapter 11 case and no appointment of a Subchapter 11 Trustee has yet been appointed.

3. Additional information regarding the Debtor's businesses and the circumstances leading to the filing of this chapter 11 case is set forth in Doug Patterson's Declaration.

### B. The Debtor's Employees

4.     As of February 17, 2022, the Debtor employed approximately sixty-three (63) employees (collectively, the "Employees"). Approximately two of the Debtor's Employees are salaried, with the remainder of the Employees accruing wages on an hourly basis.

5.     Additionally, the Debtor have approximately four (4) independent contractors (the "Independent Contractors"). Such Independent Contractors are included in the definition of "Employees," and any outstanding amounts owed to such Independent Contractors are included in the definition of "Unpaid Wages," for the purposes of this Motion and the Proposed Orders.

6.     The Employees, as with any business entity, perform a variety of critical functions for the Debtor, and its knowledge, skills and understanding of the Debtor's infrastructure, business operations and customer and vendor relations is essential to, among other things, the success of this chapter 11 case. Without the continued service and dedication of the Employees, it will be difficult, if not impossible, to operate the Debtor's businesses without an unexpected or inopportune interruption, and to prosecute this chapter 11 case in a manner that will maximize the value of the Debtor's estate.

7.     To successfully accomplish the foregoing, to minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as otherwise expected, and to maintain employee morale and a focused workforce during this critical time, the Debtor believes that it is necessary and in the best interest of its estate and all stakeholders to seek the relief requested herein.

## RELIEF REQUESTED

8.     By this Motion, the Debtor requests the Court to enter the Proposed Orders, authorizing, but not directing, the Debtor, in accordance with its stated policies and in its discretion, to: (a) pay prepetition Employee wages, salaries, paid time off, and other compensation; (b) pay prepetition Employee business expenses; (c) make contributions to prepetition benefit programs provided to Employees, the most significant of which is described below, and continue such programs in the ordinary course of business with respect to the Employees; (d) make payments for which prepetition payroll deductions were made; (g) pay processing costs and administrative expenses relating to the foregoing payments and contributions; and (h) make payments to third parties incident to the foregoing payments and contributions (collectively, and as described in greater detail below, the "Employee Wages").

9.     The Debtor also requests this Court to authorize the Banks to honor and process check and electronic transfer requests related to the Employee Wages.

### I.     OBLIGATIONS ON ACCOUNT OF EMPLOYEE WAGES AND OTHER COMPENSATION, BUSINESS EXPENSES, DEDUCTIONS, AND PAYROLL TAXES

#### A.     Unpaid Wages and Other Compensation

10.     Historically, the Debtor' gross aggregate payroll liability is approximately $80,000 per week. However, at times, its gross aggregate payroll is subject to significant variation due to various factors such as weather, standby time, testing, and work schedules. Employees are generally paid wages and salaries on a weekly basis, via direct deposit, or in the form of a paycheck distributed or mailed to Employees.

11.     Payroll is made on Fridays, for the period ending the previous Sunday (i.e., payroll is typically one week in arrears) (the "General Payroll").

12. The Debtor next General Payroll (for the period ending February 11, 2022) is on February 18, 2022, and prior to the commencement of this chapter 11 case.

13. Based on historical payroll figures, the Debtor believes that approximately $80,000 in the aggregate remains outstanding, as of the Petition Date, on account of unpaid accrued wages, salaries, overtime pay and other compensation due from the Debtor to the Employees (collectively, the "Unpaid Wages"). Of this amount, approximately $20,000 is on account of the Independent Contractors.

14. The Debtor's failure to remit full payment of the amount that the Debtor believes remains outstanding, as of the Petition Date, on account of Unpaid Wages would inflict great financial hardship on the Employees, and would damage morale and impair the Debtor's chapter 11 efforts. The Debtor, therefore, requests authority from the Court to satisfy obligations owed to the Employees on account of Unpaid Wages.

15. Pending entry of the Proposed Final Order, no individual Employee will be paid more than $12,850, in the aggregate, for any Unpaid Wages.

## B. Employee Expenses

16. Prior to the Petition Date, and in the ordinary course of the Debtor's business, the Employees incurred various expenses on behalf of the Debtor in the scope of their employment, including, without limitation, expenses for meals, travel, car rentals, fuel and other business-related expenses (collectively, the "**Employee Expenses**"). All such expenses are incurred with the applicable Employee's understanding that he or she will be reimbursed by the Debtor in accordance with the Debtor's reimbursement policy, as described in more detail below. In all case, reimbursement is contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses.

17.     Some of the Debtor's employees initially incur the Employee Expenses using personal credit cards or funds and subsequently seek reimbursement from the Debtor. However, the majority of Employees incur the Employee Expenses through corporate credit cards (the "Corporate Cards"). Although the Debtor pays the invoice for the Corporate Cards, some of the cards may be held in the names of individual Employees. Therefore, to the extent that the Debtor fails to remit payment for valid and legitimate charges, the Employees may be personally liable for the same. The Debtor has policies whereby the Employees seek reimbursement, or file expense reports for the Debtor's payment, of the Employee Expenses. These expenses are ordinary course expenses that the Employees incur in performing their job functions, including all of the Employee Expenses incurred on the Corporate Cards. It is essential to the continued operation of the Debtor's businesses that the Debtor be permitted to continue reimbursing, or making direct payments on behalf of Employees for the Employee Expenses.

18.     It is difficult for the Debtor to determine the exact amount of Employee Expenses outstanding as of the Petition Date because, among other things, the Employees may have expenses that they have yet to submit for reimbursement.

19.     The Employee Expenses were all incurred on the Debtor's behalf and with the understanding that the Employees would be reimbursed for any and all such amounts. Therefore, to avoid harming the Employees who incurred the Employee Expenses, the Debtor seeks authorization, but not direction, to continue reimbursing the Employees for the Employee Expenses in the ordinary course of business and in accordance with its prepetition practices and policies.

## C. Wage Deductions, Trust Fund Taxes and Payroll Taxes

20.     During each applicable pay period, the Debtor routinely deducts certain amounts from the Employees' pay, including, without limitation, (a) garnishments, child support and similar deductions, and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein, such as retirement contributions, legally ordered deductions, and other miscellaneous deductions (collectively, the "Wage Deductions"), and forward those amounts to various third-party recipients.

21.     Accordingly, the Debtors seek authority to continue to forward prepetition Wage Deductions to the applicable third-party recipients on a postpetition basis in the ordinary course of its business, as routinely done prior to the Petition Date.

22.     Furthermore, the Debtor is required by law to withhold from the Employees' pay certain amounts related to, among other things, federal, state and local income taxes and social security and Medicare taxes (collectively, the "Trust Fund Taxes") for remittance to the appropriate federal, state or local taxing authorities.  The Debtor must then match from its own funds for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "**Payroll Taxes**").  The Debtor remits Trust Fund Taxes and Payroll Taxes to after each payroll, and holds such amounts until they are paid to the appropriate authority.  The Debtor seeks to remit and pay such amounts, in the ordinary course of business, for the reasons set forth herein.

23.     By this Motion, the Debtor seeks authority, but not the direction, from the Court to remit Wage Deductions, Trust Fund Taxes and Payroll Taxes in the ordinary course of business, including, without limitation, amounts determined to be related to the period prior to the Petition Date.

## II.      EMPLOYEE BENEFITS

### A.      Paid Time Off

24.     The Debtor provides sick and vacation time, as well time for personal reasons or religious observances, to all qualifying Employees as a paid time-off benefit ("**Paid Time Off**"). Generally speaking, full-time, Employees accrue Paid Time Off based on the amount of hours worked. Paid Time Off may be carried over to the subsequent year. Upon termination or retirement, the Employees generally are entitled to a cash payment for accrued and unused Paid Time Off; to the extent that an Employee resigns, the Employee is not entitled to any such cash payment.

25.     Subject to the Court's entry of the Proposed Orders, the Debtor intends to comply with its policies related to Paid Time Off. The Debtor estimates that, as of the Petition Date, no amount of Paid Time Off for Employees has accrued but remains unpaid. Through this Motion, the Debtor requests authority, but not direction, from the Court to continue to honor its Paid Time Off policies in the ordinary course of business, and to honor and pay, in its discretion, any prepetition amounts related thereto.

### B.      Additional Employee Benefits

26.     The Debtor deducts monthly contributions from Doug Patterson's salary to contribute to Mr. Patterson's retirement plan. The deductions in the amount of $1,400 per month are defer from Mr. Patterson's wages.

27.     As of the Petition Date, the Debtor estimates that, at most, $1,400 is owed by the Debtor on account of these retirement contributions. The Debtor seek authorization, but not direction, to continue to pay in the ordinary course of business amounts associated with this deductions.

## BASIS FOR RELIEF

**I.    The Court Should Authorize, But Not Direct, the Debtor, In Its Discretion, To Pay or Otherwise Honor the Employee Wages and Benefits**

28.    The Debtor seeks the relief requested herein because any delay in paying or otherwise honoring the Employee Wages could severely disrupt the Debtor' relationship with the Employees and irreparably impair the Employees' morale at a time when their continued dedication, confidence and cooperation are most critical to the Debtor and the success of this chapter 11 case.  The Debtor faces the risk that the success of this case and its ability to operate its business without any unexpected or inopportune interruption may be severely jeopardized if the Debtor is not immediately granted authority to pay the Employee Wages.

29.    Employees are crucial to the operation of a company's business and they are crucial to the success of a chapter 11 case.  The Debtor simply cannot risk the substantial disruption of its businesses and affairs that would, in all likelihood, accompany any decline in workforce morale attributable to the Debtor's failure to pay the Employee Wages in the ordinary course of business.  Absent the requested relief, the Employees would suffer great hardship and, in many instances, financial difficulties, since these monies are needed to enable them to meet their personal obligations.  Additionally, without the requested relief, the Debtor's stability would be undermined by the potential threat that otherwise loyal Employees at all levels would seek other employment.

30.    Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee  may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –

      (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or

      (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services, for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor….

11 U.S.C. § 507(a)(4).

31.    Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

allowed unsecured claims for contributions to an employee benefit plan –

      (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

      (B)    for each such plan, to the extent of –

          (i)    the number of employees covered by each such plan multiplied by $12,850; less

          (ii)    the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

*Id.* at § 507(a)(5).

32.     The Debtor believes that the Unpaid Wages are entitled to priority status under section 507(a)(4) of the Bankruptcy Code, to the extent such wages do not exceed $12,850 per Employee. The Debtor would therefore be required to pay these claims in full to confirm any chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan). Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

33.     Moreover, the vast majority of the Employees rely exclusively on their full compensation or reimbursement of their wages or expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay Unpaid Wages. Additionally, the Debtor believe that if it is unable to honor such obligations, the morale and loyalty of the Employees will be jeopardized at a time when such support is critical to, among other things, its chapter 11 efforts and its ability to effectively prosecute this chapter 11 case.

34.     Additionally, the Wage Deductions, Trust Fund Taxes, and Payroll Taxes principally represent portions of the Employees' pay that governments (in the case of the Trust Fund Taxes and Payroll Taxes), the Employees (in the case of the voluntary Wage Deductions), and certain authorities (in the case of the involuntarily Wage Deductions) have designated for deduction from the Employees' pay. The Debtor's failure to pay these amounts could result in hardship to certain Employees and an administrative burden for the Debtor. Indeed, the Debtor would expect inquiries from garnishors regarding any failure by the Debtor to submit, among other things, child support and alimony payments that are not the Debtor's property

but, rather, have been withheld from the Employees' pay on such parties' behalf. Moreover, if the Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's failure to submit such payments.

35. The Employees are essential, among other things, to the orderly and successful prosecution of this chapter 11 case and to avoid any unexpected or inopportune interruption of the Debtor's business operations. They have an intimate knowledge of the Debtor's infrastructure and operations, and any deterioration in the Employees' morale and welfare at this critical time undoubtedly would adversely impact the Debtor and the success of this case.

36. Entry of the Proposed Orders will alleviate any such concerns, as it will allow the Debtor to avoid any unexpected or inopportune interruptions to its business operations, and enable them to maximize the value of the estate for the benefit of all stakeholders.

37. For these reasons, the Debtor submits that the relief requested herein is necessary, prudent and in the best interests of the Debtor, its estate and creditors, and should therefore be granted.

### II. The Court Should Authorize the Banks to Honor and Process the Debtor' Payments on Account of the Employee Wages and Benefits

38. The Debtor also requests the Court to authorize the Banks, when requested by the Debtor, in its discretion, to honor and process checks or electronic fund transfers drawn on the Debtor's bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments.

39. The Debtor further requests that all of the Banks be authorized to rely on the Debtor's designation of any particular check or electronic payment request as approved pursuant to this Motion.

## SATISFACTION OF BANKRUPTCY RULE 6003(b)

40.     Pursuant to Rule 6003(b) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), any motion seeking to use property of the estate pursuant to section

363 of the Bankruptcy Code or to satisfy prepetition claims within twenty-one days of the

Petition Date requires the Debtor to demonstrate that such relief "is necessary to avoid

immediate and irreparable harm."  The Debtor believes that, among other things, the success of

its chapter 11 efforts will require the continued focus and dedication of the Employees, as any

deterioration in employee morale or significant loss in workforce will have an adverse impact

on the Debtor's ability, among other things, to continue to operate its business without any

unexpected or inopportune interruption and to successfully prosecute this chapter 11 case.

Thus, if the relief requested herein is not granted, the failure to satisfy the Employee Wages

would cause the Debtor's estate immediate and irreparable harm by detracting from, and

potentially derailing, the Debtor's chapter 11 efforts.

41.     For this reason and those set forth above, the Debtor respectfully submit that

Bankruptcy Rule 6003(b) has been satisfied and the relief requested herein is necessary to

avoid immediate and irreparable harm to the Debtor and its estate.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

42.     Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of

property other than cash collateral is stayed until the expiration of 14 days after entry of the

order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).  As set forth throughout

this Motion, any delay in paying the Employee Wages would be detrimental to the

Debtor, its estate and creditors.  Indeed, the Debtor's ability to operate its business without any

unexpected or inopportune interruption requires, in large part, an able and willing workforce,

which the Debtor currently have in the Employees.

43.     For this reason and those set forth above, the Debtor submits that ample cause exists to justify a waiver of the fourteen day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable to the Proposed Orders.

## RESERVATION OF RIGHTS

44.     Nothing in the Proposed Orders or this Motion is intended or shall be deemed to constitute an assumption of any agreement pursuant to section 365 of the Bankruptcy Code or an admission as to the validity of any claim against the Debtor and its estate, shall impair, prejudice, waive or otherwise affect the rights of the Debtor and its estate with respect to the validity, priority or amount of any claim against the Debtor and its estate, or shall be construed as a promise to pay a claim.

## NOTICE

45.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee for the Northern District of Texas; (ii) the Office of the United States Attorney; (iii) the Internal Revenue Service; (iv) the Debtor's creditor matrix; (v) counsel for Philadelphia Indemnity Insurance Company; (vi) FCCI Insurance Company; and (vii) Wells Fargo Bank, N.A. Notice of this Motion and any order entered hereon will be served in accordance with Rule 9013-1 of the Local Rules of Bankruptcy. In light of the nature of the relief requested herein, the Debtor submit that no other or further notice is necessary.

## NO PRIOR REQUEST

46.     The Debtor has not previously sought the relief requested herein from this or any other Court.

## CONCLUSION

WHEREFORE, the Debtor request entry of the Proposed Orders, granting the relief requested herein and such other and further relief as is just and proper.

Dated: February 17, 2022.                    Respectfully Submitted,


                                             NORRED LAW, PLLC

                                             By: _/s/ Clayton L. Everett_____
                                             Clayton L. Everett
                                             Texas State Bar No. 24065212
                                             clayton@norredlaw.com
                                             515 E. Border Street
                                             Arlington, Texas 76010
                                             Telephone: (817)704-3984
                                             Proposed Counsel for Debtor/Debtor in Possession