Warren Norred, Texas State Bar No. 24045094
Clayton L. Everett, Texas State Bar No. 24065212
NORRED LAW, PLLC
515 E. Border Street
Arlington, Texas 76010
Telephone: (817) 704-3984
clayton@norredlaw.com
Proposed Counsel for Debtor

United States Bankruptcy Court
Northern District of Texas
Fort Worth Division

| | |
|---|---|
| In re:<br>**Reytech Services, LLC**<br>Debtor | Case No. 22-40334-mxm11<br>Chapter 11 |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Reytech Services, LLC ("Reytech") as debtor-in-possession, and pursuant to Bankruptcy Rule 4001(b), and files this *Motion for Entry of Interim and Final Orders Authorizing the Use of Cash Collateral and Granting Adequate Protection* (the "Motion"). In support of the Motion, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This case and all related matters have been referred to this Court pursuant to 28 U.S.C. § 157. This Motion constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (M) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.  On February 17, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of Chapter 11 of the Bankruptcy Code.

3.  The Debtor continues to operate and to manage their business pursuant to section 1184 of the Bankruptcy Code. The Debtor has not been removed as "debtor-in-possession" pursuant to section 1185 of the Bankruptcy Code. Areya Aurzada is the duly appointed Subchapter V Trustee in this case. No official committee of unsecured creditors has been appointed in either of these bankruptcy cases.

## ABOUT THE COMPANY

4.  The Debtor operates a utilities construction company in Grand Prairie servicing the greater north Texas and surrounding communities. The Debtor currently employs approximately 55 individuals, including employees, contractors, and salaried company members. The Debtor's primary business comes from public and municipal construction projects. Performance of these projects required surety bonds. The Debtor currently has five ongoing project which are bonded by FCCI Insurance Company ("FCCI").

5.  Reytech was formed in 2010 and has been operating continuously since that time.

## SEIZURE OF OPERATING FUNDS

6.  In or around 2017, Philadelphia Indemnity Insurance Company ("Philadelphia") sued Reytech Services, LLC on an indemnity claim for a project that was performed by PC Contractors, LLC. Reytech strongly disputed Philadelphia's claim, resulting in significant litigation over the past few years. However, eventually a judgment of

approximately $2.2 million dollars was awarded against Reytech as a guarantor of $2.2 million dollars debt.

7. In September 2021, Philadelphia seized Reytech's operating account held at First Bank Texas of Baird ("FBT") by a garnishment action in case number 4:21-CV-01097-P, in the Northern District of Texas. It is believed that Philadelphia and FBT is holding approximately $535,000 dollars of Reytech's operating cash (the "Funds").

8. During the garnishment action, Philadelphia would agree to release the garnishment on the condition that the seized funds would be turned over to the control of FCCI. It is unclear the reasons for why Philadelphia would agree to a release of the funds, but it appears that both companies are re-insured by the same Tokio Marine American Insurance Company.

9. Shortly before the administrative freeze of the Funds, Reytech received deposits of $263,884.50 on September 1, 2021, from RCS-Builders First Source Terrell and $224,369.25 on September 3, 2021, from City of Weatherford Annual Paving. Neither of these projects were subject to FCCI's bonds and are, instead, construction trust funds owed to employees and downstream subcontractors and vendors.

10. Reytech filed this petition in an effort to dissolve the garnishment, get a return its operating cash, and preserve the going concern value of its business.

11. The Debtor intends to propose a Plan of Reorganization to resolve the Philadelphia debt while maintaining or growing its business so that it may emerge from bankruptcy with the ability to meet future ongoing obligations.

**POTENTIAL CASH COLLATERAL INTERESTS**

12. The Debtor does not believe that there existed any perfected security interest in any of the Debtor's cash or deposit accounts as of the Petition Date. The Funds are arguable earmarked for specific expenses and are construction trust funds, and therefore do not constitute property of the estate.

13. Consequently, there are no known interests in cash collateral existing as of the Petition Date.

14. Nevertheless, several creditors have filed UCC-1s asserting interests in accounts receivable and proceeds thereof, which may result in future cash collateral upon collection of receivables existing as of the Petition Date (the "Cash Collateral").

15. The Debtor has identified the following UCC-1 filings with respect to Reytech which may have cash collateral implications:

| Secured Party | Date Filed | Collateral |
| --- | --- | --- |
| Wells Fargo Bank, N.A. | April 24, 2020 | Equipment |
| Philadelphia Indemnity Insurance Company | November 9, 2018 | Rights under GIA |
| FCCI Insurance Company | November 19, 2021 | Rights under GIA |

16. It would seem clear, however, that the maximum cash collateral interest held by any one or more of the above-listed creditors (the "Listed Creditors") will not exceed the Petition Date value of the Debtor's accounts receivable (the "Prepetition Collateral"). The Debtor anticipates that the balance of post-petition accounts receivable will stay materially constant or will increase on a month-to-month basis during these bankruptcy cases. As such,

to the extent there exists any valid security interest in receivables on the Petition Date, which the Debtor does not concede, such creditors will be adequately protected by replacement liens in post-petition accounts receivable and proceeds thereof.

## **RELIEF REQUESTED**

17.  Pursuant to this Motion and section 363(c) of the Bankruptcy Code, the Debtor seeks interim and final orders authorizing the use of Cash Collateral in which one or more of the Listed Creditors may assert a security interest. The Debtor requests authority to use Cash Collateral in accordance with the Budget attached hereto as **Exhibit A** (the "Budget") on an interim basis, and in accordance with subsequent budgets hereafter approved by the Court on a final basis.

18.  In addition, under sections 361 and 363(e) of the Bankruptcy Code, the Debtor seeks to grant adequate protection through the issuance of a replacement lien in favor of the Listed Creditors on postpetition accounts receivable and proceeds thereof (a) to the extent of the value of each of their security interest in the Prepetition Collateral, and (b) in the same order of priority as presently existing in the Prepetition Collateral, for any diminution in value of their individual security interests in the Prepetition Collateral as of the Petition Date as a result of the use of Cash Collateral and the imposition of the automatic stay.

19.  The relief requested herein is necessary to prevent immediate and irreparable harm to the Debtor's chapter 11 estate and should provide sufficient funds to permit the Company to continue to operate its business and to satisfy its payroll and other direct operating expenses. The Debtor requests approval for interim use of Cash Collateral through March 10, 2022 on an interim basis (the "Interim Order") and thereafter on a permanent basis (the "Final Order").

**BASIS FOR RELIEF**

20. As explained above, the Debtor submits that no creditor holds a perfected lien in any of the Debtor's cash or deposit accounts. To the extent that a creditor does have a prefected security interest in the cash or deposit accounts, the Debtor anticipates that their receivables will retain their value during the bankruptcy case through continued operations. Thus, even if any of the Listed Creditors hold valid liens in the accounts receivables, the value of their security interest is adequately protected. Nevertheless, to the extent of any diminution in value of any such valid security interest occasioned by the use of Cash Collateral, the Debtor proposes to grant the Listed Creditors replacement liens in post-petition accounts receivable and proceeds thereof in the same order of priority as presently existing in the Prepetition Collateral.

21. The Debtor asserts that the interests of the Listed Creditors in the Prepetition Collateral are adequately protected. The Debtor's continued use of the Prepetition Collateral maximizes the position of all of the Debtor's creditors, including the Listed Creditors. In the course of operations, the Debtor will process inventory, provide services to customers, generate and collect new receivables, and use the proceeds of the same to acquire new inventory, perform new services and pay operating expenses. Such ongoing operations benefit the Listed Creditors in that new accounts receivable will be created.

22. The Company has no material source of ongoing income other than from its operations, the collection of accounts receivable and through periodic voluntary capital contributions from equity holders. At the present time, an immediate and critical need exists for the Debtor to be permitted access to funds in order to continue the operation of their business, to pay employees, and to protect their ability to reorganize in accordance with

chapter 11 of the Bankruptcy Code.

23. Pursuant to section 363(c)(2)(B) of the Bankruptcy Code, the Debtor requests that the Court authorize and approve the Debtor's use of Cash Collateral for the payment of operating expenses in accordance with the Budget and with subsequently approved budgets. To remain in possession of their property, to continue their business activities, and to achieve a successful reorganization, the Debtor's request use of Cash Collateral in the Debtor's ordinary business operations. The Debtor currently has no present alternative borrowing source from which the Debtor could secure additional funding to operate their business, although the Debtor expects to continue receiving capital contributions from equity members in the short term to cover expense shortfalls. The Debtor believes that payment of operating expenses is reasonable and that such payment is for necessary business expenses that must be paid in order to continue the Debtor's business operations.

24. In the event the Court does not authorize the Debtor's proposed use of Cash Collateral, the Debtor believes that the Debtor will be unable to maintain their current business operations and to confirm a plan of reorganization as contemplated by the Bankruptcy Code. Without the use of Cash Collateral, the Debtor will be seriously and irreparably harmed, resulting in significant losses to the Debtor's estates and their creditors.

25. In filing this Motion, the Debtor does not admit that any of the Listed Creditors holds valid, perfected, enforceable or unavoidable prepetition liens and security interest in and to any of the Prepetition Collateral. The Debtor does not waive the right to contest the validity, perfection, enforceability or avoidability of the Listed Creditors' claims, liens and security interests in and to the Prepetition Collateral.

## APPLICABLE AUTHORITY

26. One of the Debtor's most pressing concerns is the need for immediate use of Cash Collateral and the return of the Funds to the Debtor's control and access, pending a final hearing on this Motion. Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fifteen (15) days after the service of such motion. *See* Fed.R.Bankr.P. 4001(b) and (c); 11 U.S.C. 363. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the restricted use of cash collateral to the extent necessary to avoid immediate and irreparable damage to the Debtor's estates. The Debtor requires use of Cash Collateral to pay present operating expenses, including payroll, and to pay vendors to ensure a continued supply of materials essential to the Debtor's continued viability.

27. The Debtor requests immediate authority to use the Cash Collateral to fund the Debtor's day-to-day operations. Absent such relief, the Debtor will not be able to continue to operate their business. In sum, failure to obtain authorization for the use of the Cash Collateral will be disastrous to the Debtor and their creditors. Entry of an order authorizing the use of Cash Collateral will minimize disruption to the Debtor's business and operations and permit the Debtor to meet payroll and other operating expenses. Absent use of the Cash Collateral, the Debtor's estate would not have sufficient funds to satisfy ongoing business obligations. Allowing use of Cash Collateral, therefore, is in the best interest of the Debtor's estate.

28. The use of Cash Collateral and the adequate protection proposed herein is fair and reasonable under the circumstances, reflects the Debtor's exercise of prudent business judgment, and is supported by reasonably equivalent value and fair consideration. Also, the

adequate protection proposed herein in the form of replacement liens, in addition to existing liens in the Prepetition Collateral, is sufficient to protect the interests of the Listed Creditors. As such, the Debtor should be afforded protection equivalent to those provided in section 364(e) of the Bankruptcy Code.

## LIMITED NOTICE

29. Notice of this Motion will be provided to (i) the Office of the United States Trustee for the Northern District of Texas; (ii) each of the Listed Creditors at the addresses provided in their filed UCC-1 Financing Statements; (iii) the Subchapter V Trustee appointed herein; (iv) the holders of the twenty (20) largest unsecured claims against the Debtor; and (v) parties requesting notice; all as set forth below. The Debtor submits that no further notice need be provided.

## CONCLUSION

30. The relief requested herein should ensure that the Debtor's chapter 11 estates have sufficient resources to commence their chapter 11 cases and to provide a seamless transition to operating the Debtor's business as debtor-in-possession. The Debtor requests that the Court grant the Motion.

WHEREFORE, the Debtor respectfully request that the Court (i) grant the Motion;

(ii) enter an Interim Order permitting the Debtor to use Cash Collateral consistent with the Budget;

(iii) after a final hearing on this Motion, enter a Final Order permitting the Debtor to use Cash Collateral on a final basis as provided herein; (iv) grant the Listed Creditors replacement liens in postpetition accounts receivable and proceeds thereof as provided herein; and (v) grant all such other and further relief as is just and proper.

Dated: February 22, 2022.

Respectfully Submitted,

NORRED LAW, PLLC

By: */s/ Clayton L. Everett*
Clayton L. Everett
Texas State Bar No. 24065212
clayton@norredlaw.com
515 E. Border Street
Arlington, Texas 76010
Telephone: (817)704-3984
Proposed Counsel for Debtor/Debtor in Possession

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this Motion was served on the Office of the U.S. Trustee, the Subchapter V Trustee, the Debtor's 20 largest creditors and upon the parties receiving notice via the Court's CM/ECF system and via First Class U.S. Mail to the parties below:

| | |
|---|---|
| *U.S. Trustee*<br>Elizabeth A. Young<br>1100 Commerce Street Room 976<br>Dallas, TX 75242<br>Elizabeth.a.young@usdoj.gov | *Subchapter V Trustee*<br>Areya Holder-Aurzada<br>Holder Law<br>901 Main Street Ste. 5320<br>Dallas, TX 75202 |
| Philadelphia Indemnity Insurance Company<br>One Bala Plaza<br>Bala Cynwyd, PA 19004 | First Bank Texas<br>244 Market Street<br>Baird, TX 79504 |
| *Via US Mail and email:*<br>Steven Beauchamp<br>Krebs Farley & Dry, PLLC<br>909 18th Street<br>Plano, TX 75074<br>SBeauchamp@krebsfarley.com<br>Counsel for Philadelphia Indemnity Ins. Co. | *Via US Mail and email:*<br>Mark Petrocchi<br>2200 Forest Park Blvd.<br>Fort Worth, TX 76110<br>mpetrocchi@lawgjm.com<br>Counsel for First Bank Texas |
| FCCI Insurance Company<br>6300 University Parkway<br>Sarasota, FL 34240 | Wells Fargo Bank, N.A.<br>800 Walnut Street, F0005-044<br>Des Moines, IA 50309 |

| | |
|---|---|
| *Via US Mail and email:*<br>Robert M. Fitzgerald<br>Law Offices of Robert M. Fitzgerald, PC<br>1219 FM 314<br>Van, Texas 75790<br>rfitzgerald@rmflaw.net<br>Counsel for FCCI Insurance Company | *Via US Mail and email:*<br>Mike F. Pipkin<br>Weinstein Radcliff Pipkin LLP<br>8350 N. Central Expwy. Suite 1550<br>Dallas, TX 75206<br>mpipkin@weinrad.com<br>Counsel for FCCI Insurance Company |

By: __/s/ Clayton L. Everett____